No. 45,327

George H. Schnug, *Appellant,* v. Pearl A. Schnug, *Appellee.*

(454 P. 2d 474)

Opinion filed May 17, 1969.

*R. Bowland Ritchie,* of Wichita, argued the cause and was on the briefs for the appellant.

*Robert L. Driscoll,* of Wichita, argued the cause, and *Verne M. Laing, Ferd E. Evans, Jr., Ralph R. Brock, Joseph W. Kennedy, C. Robert Bell* and *Robert I. Guenther,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: This was an action to recover on a promissory note and to foreclose a real estate mortgage given as security. The

plaintiff was unsuccessful and appeals from a judgment rendered in favor of defendant on the ground the note was barred by the statute of limitations.

The plaintiff and defendant were married in September, 1961, and their marriage was dissolved on July 31, 1963, by divorce in the District Court of Sedgwick County. All property rights of the parties were settled in that proceeding.

The instant action was commenced on May 18, 1965. It has been in this court once before. (*Schnug v. Schnug*, 197 Kan. 174, 415 P. 2d 283.) There the trial court sustained defendant's motion for summary judgment on the ground that the indebtedness, evidenced by the promissory note, was barred by divorce proceedings between the parties in 1963. On appeal we reversed, holding the divorce decree did not preclude plaintiff's action. We also held that defendant's answer raised genuine issues of material fact and remanded the case to the district court for trial of those issues.

On November 1, 1957, defendant-appellee, then named Pearl Hachtel—a single woman, executed and delivered to the plaintiff-appellant her promissory note in the amount of $1,631.09. As security for payment of the note, she executed and delivered to plaintiff a second mortgage upon real estate owned by her in the City of Wichita. The promissory note provided that it was "payable on demand after date." The mortgage was on a short form and reads in pertinent part as follows:

". . . to secure the payment of a promissory note in the amount of $1631.09 with interest thereon at 6% per annum from date payable on demand to George H. Schnug.

"This is a second mortgage to a $2000.00 mortgage previously executed to the Railroad Building Loan & Savings Association and said first mortgage is excepted from the warranty hereof. Dated this first day of November 1957.

"/s/ Pearl Hachtel
"Pearl Hachtel."

After remand of the case to district court, plaintiff amended his petition and alleged four reasons why his action was not barred by the statute of limitations, as pleaded by defendant in her answer. Plaintiff alleged in substance: (1) The defendant made three payments on the promissory note on October 11, 1960, December 15, 1962, and January 15, 1963, which tolled the statute of limitations; (2) the statute of limitations did not commence to run until March 21, 1965, when plaintiff demanded payment of the promissory note; (3) the promissory note and real estate mortgage contained am-

biguous language which should be construed to make the note payable only after a prior lien on the property had been liquidated; and (4) a mutual mistake of fact by the parties caused the promissory note to be "payable on demand" rather than after the prior lien on the property had been liquidated.

With issues thus framed the case went to trial and judgment was rendered in favor of defendant. After plaintiff filed a motion for a new trial, the trial court determined the case should be reopened to allow plaintiff to produce evidence concerning a mutual mistake of fact as to the note and mortgage. After hearing the evidence referred to, the trial court on June 5, 1967, made findings of fact and concluded that no mutual mistake of fact existed between the parties; that the note was barred by the statute of limitations, and the real estate mortgage could not be foreclosed since the note was barred by the statute of limitations.

Plaintiff again filed motions for a new trial and in the alternative to amend findings of fact and conclusions of law, both were overruled. Thereafter plaintiff perfected this appeal.

Plaintiff contends the statute of limitations did not commence to run on the promissory note until after a note and first mortgage on the real estate were paid in full. He argues that since the note and mortgage sued on were executed by defendant at the same time, in the course of the same transaction and because they concern the same subject matter, they must be construed together; and that the parties intended the promissory note was not to become due until after the first mortgage had been removed from the property.

Plaintiff's position appears to be that the court should look beyond the instruments because: (1) The note and mortgage construed together gave rise to an ambiguity or (2) in the alternative a mutual mistake of fact existed between the parties at the time the note and mortgage were executed.

In order to sustain his assertion of ambiguity, plaintiff must first mesh his case with rules governing the construction of a written contract. These rules are well summarized in *Oliver v. Nugen,* 180 Kan. 823, 308 P. 2d 132, where the court said:

"It is a judicial function to interpret a written contract which is free from ambiguity and does not require oral testimony to determine its meaning. Ambiguity in a written instrument does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. (*Klema v. Soukup,* 175 Kan. 775, 267 P. 2d 501.) If a written contract is actually

ambiguous concerning a specific matter in the agreement, facts and circumstances existing prior to and contemporaneously with its execution are competent to clarify the intent and purpose of the contract in that regard but not for the purpose of varying and nullifying its clear and positive provisions. (*Maltby v. Sumner*, 169 Kan. 417, 219 P. 2d 395.)" (pp. 827, 828.)

We are unable to find in the instruments in question the ambiguity asserted by plaintiff. The note contained an unconditional promise to pay $1631.09 to plaintiff and "payable on demand after date." The mortgage refers to the promissory note as being "payable on demand." Neither the note nor mortgage say anything about the note being payable after the liquidation of the first mortgage. The only mention of the first mortgage is the simple statement that this mortgage is second to the mortgage previously executed to the Railroad Building Loan & Savings Association. The law presumes that the parties understood their contract and they had the intention which its terms import. It is not the function of courts to make contracts but to enforce them as made (*Springer v. Litsey*, 185 Kan. 531, 345 P. 2d 669, and *Gardner v. Spurlock*, 184 Kan. 765, 339 P. 2d 65), nor is it within the province of the court to reform the instrument by rejecting words of clear and definite meaning and substituting others therefor. (*Drilling, Inc. v. Warren*, 185 Kan. 29, 340 P. 2d 919, and *Geier v. Eagle-Cherokee Coal Mining Co.*, 181 Kan. 567, 313 P. 2d 731.)

Even though the note and mortgage are construed together, the language of the note describing the debt controls and, if the debt is barred, the mortgage cannot be foreclosed. (*Dickey v. Wagoner*, 160 Kan. 216, 160 P. 2d 698; *Timmonds v. Messner*, 109 Kan. 518, 200 Pac. 270, and 9 Thompson on Real Property, Mortgages, § 4745, p. 384.) The promissory note being "payable on demand" was a demand obligation (K. S. A. 52-207 [repealed, Laws of 1965, Ch. 564, Sec. 416]) in effect on November 1, 1957. (See, also, K. S. A. 84-3-122.) The statute of limitations commences to run on a demand obligation on the date of its execution. (*Golden Rule Oil Co. v. Liebst*, 153 Kan. 123, 109 P. 2d 95; *Cassity v. Cassity*, 147 Kan. 411, 76 P. 2d 862, and *Stone v. Barr*, 111 Kan. 775, 208 Pac. 624.) The rule holds regardless whether the payee has made an actual demand for payment. (*Stone v. Barr*, supra, and *Douglass v. Sargent & Bro.*, 32 Kan. 413, 4 Pac. 861.)

The phrase "payable on demand" has a commonly understood meaning in negotiable instruments law and since neither the note nor the mortgage contained other language, stating when the debt

is to be paid, there is simply no indication that the phrase was used to mean something different from its commonly understood legal meaning. We find nothing in the instruments which could be construed to require payment of the debt only after the first mortgage had been removed from the property.

Furthermore, the proposition advanced by plaintiff in this regard actually suggests an omission from the instruments of a condition that the debt became payable only afer the first mortgage had been released, rather than an ambiguity. The omission of a statement does not create an ambiguity which authorizes the admission of parol evidence to vary the expressed terms of the instrument. In this connection we find the following statement in the recent case of *Wood v. Hatcher,* 199 Kan. 238, 428 P. 2d 799:

". . . Ambiguity does not arise from total omission. It arises when application of pertinent rules of interpretation to an instrument as a whole fails to make certain which one of two or more meanings is conveyed by the words employed by the parties. . . ." (p. 242.)

In the absence of ambiguity, the only possible basis for the admission of parol evidence to vary the note's time for payment is plaintiff's claim that the note was drawn as a demand obligation, as a result of a mutual mistake of fact. In the absence of proof of fraud or mutual mistake in the procurement of an unambiguous written contract, the contract must be enforced according to its terms, and evidence of parol understanding at variance therewith cannot be considered. (*In re Estate of Smith,* 199 Kan. 89, 427 P. 2d 443.)

Plaintiff's testimony to support his theory of mutual mistake was not admitted in the first instance by the trial court. However, as we have noted, the case was later reopened and plaintiff was allowed to submit his testimony in support of his allegation of the existence of a mutual mistake of fact. He testified in substance that regardless of the language used in the note, the parties understood it was not to become payable until the first mortgage was liquidated.

In her testimony, defendant denied any agreement such as that suggested by plaintiff. She testified that it was her intention to pay off both debts simultaneously. The trial court resolved the dispute in defendant's favor.

In seeking to reform the instruments on the grounds of mutual mistake plaintiff had the burden of proving the mistake was made by both parties and not just one. (*Palmer v. The Land & Power*

*Co.,* 180 Kan. 492, 306 P. 2d 152; *New York Life Ins. Co. v. Dicken-sheets,* 165 Kan. 159, 193 P. 2d 649, and *Algeo v. Employers Indemnity Corporation,* 119 Kan. 186, 237 Pac. 879.)

Plaintiff's theory of a mutual mistake of fact was refuted by defendant's testimony which supported the trial court's findings. When findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, the power of this court begins and ends in determining whether there is any competent substantial evidence to support the findings, and when they are so supported they are accepted as true and will not be disturbed on appeal. (*Atkinson v. Herington Cattle Co., Inc.,* 200 Kan. 298, 436 P. 2d 816.)

Therefore, since the note and mortgage in the instant case are neither ambiguous nor the products of a mutual mistake, the expressed terms thereof cannot be varied by parol evidence. (*In re Estate of Smith,* supra.) It follows the statute of limitations commenced to run against plaintiff's time as of November 1, 1957, the execution date of the promissory note.

Plaintiff next argues in the alternative that even though the statute of limitations commenced to run on November 1, 1957, it was interrupted by defendant making payments on the note. In this regard plaintiff claims the following payments were made by defendant:

> "October 11, 1960 ................................ $50.00
> "December 15, 1962 ............................. $24.00
> "January 15, 1963 ................................ $39.00

The payments were noted on the back of the promissory note. According to plaintiff's testimony he made the notations "When the litigation started." Defendant contends that she made no payments on the note, secured by plaintiff's mortgage, although she had tried twice and been refused. We pause to note, that only the alleged payment of October 11, 1960, would have interrupted the running of the five-year limitation statute, which commenced on November 1, 1957, and became a bar as of November 1, 1962. Plaintiff makes no reference concerning the effect of the alleged payments of December 15, 1962, and January 15, 1963, in either his statement of points or brief. Plaintiff testified that he had credited the amounts stated on the promissory note because defendant had failed to inform him what the payments were for when they were made. Plaintiff argues that, even though defendant owed sums in addition to the promissory note, since she failed to specify which of the debts a payment was for, plaintiff was at liberty to credit which account

he chose. If supported by the facts plaintiff's proposition is sound. (*Neal v. Gideon,* 157 Kan. 1, 138 P. 2d 419.)

However, here again the evidence is disputed and the conflict is resolved in favor of defendant by the trial court's findings.

Plaintiff testified that when the $50 payment, of October 11, 1960, was made, a tenant occupied Mrs. Schnug's house, which was covered by the mortgage. The tenant had threatened to move out since there was no drain for his automatic washer. Plaintiff contacted a plumber who helped him install a drain for the automatic washer. Plaintiff paid out $50 on the project. He testified that he had not been working and, about a week after the work had been completed, he asked Mrs. Schnug if she had any money. Plaintiff's testimony is narrated as follows:

". . . Mrs. Schnug reached in her purse and gave him $50.00. The plumber's bill was $50.00. Mrs. Schnug knew that Mr. Schnug had spent the $50.00 for the plumber. Presumably she paid him the $50.00 after she found out that he had spent $50.00.

"Mrs. Schnug did not tell Mr. Schnug that the $50.00 was for the plumbing work. . . ."

Plaintiff further testified that defendant was not consulted before he made the credit on the note when the lawsuit was commenced.

Plaintiff's testimony was contradicted by defendant who testified as follows:

"Q. At that time, had Mr. Schnug paid a $50.00 bill for the fixing of some part of the Newell Street property?

"A. He did. And I paid him the $50.00 back, and told him what it was for.

"Q. Did he tell you how much the cost of that operation was for?

"A. Yes, sir.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Let me ask you this, Mrs. Schnug, At the time you gave the $50.00 to Mr. Schnug, did you tell him what the $50.00 was for?

"A. I told him it was for the plumbing bill."

After hearing the conflicting testimony of both plaintiff and defendant, the trial court found the $50 payment was intended by both parties to reimburse plaintiff for funds advanced as payment for the plumbing repairs. The trial court concluded that no payments were made by defendant on the note in question which would toll the statute of limitations.

We believe the testimony related clearly supports the trial court's findings and therefore those findings will not be disturbed on appeal. (*Atkinson v. Herington Cattle Co., Inc.,* supra.)

The question of tolling the statute by alleged payments on a note, under quite similar circumstances, was before us in *Dickey v. Wagoner*, 160 Kan. 216, 160 P. 2d 698. There we said:

"Appellant's principal contention is that the judgment is contrary to law and not supported by the evidence. We turn to the record for the purpose of ascertaining whether there is sound basis for his position. When carefully examined it discloses testimony from which the trial court could have found payment as well as ratification of the credit endorsements. The difficulty is that it discloses other testimony to the contrary just as convincing. Mrs. Wagoner testified positively that she had made no payments on the note, also that on the date payments were endorsed she had given no authorization to anyone to place the endorsements thereon and that they were placed there without her knowledge and consent. It is apparent the trial court believed her testimony and placed little, if any, weight on that of witnesses for the appellant. This it had a right to do and its conclusion is binding on appellate review. It has been repeatedly held that questions pertaining to the credibility of witnesses and the weight to be given their testimony are for the trial court to determine and that so long as there is some substantial evidence to support its judgment, its decision is conclusive on appeal irrespective of whether there was other evidence which would have required it to reach a contrary conclusion had it seen fit to believe such evidence. (*Killough v. Swift & Co. Fertilizer Works*, 154 Kan. 113, 114 P. 2d 831; *Gale v. Fruehauf Trailer Co.*, 158 Kan. 30, 33, 145 P. 2d 125, and cases there cited." (p. 218.)

Lastly, plaintiff asserts that his cause of action against defendant did not accrue until the first mortgage lien was released simply because plaintiff's mortgage was inferior to that of the Railroad Building Loan & Savings Association. Plaintiff's position in this regard appears to be that payments on the first mortgage enhanced the value of his second mortgage, thereby having the same effect as if payments had been made directly upon the second mortgage promissory note. Plaintiff makes the ingenuous argument that by reason thereof the statute of limitations as to the second mortgage note was tolled by each payment upon the first mortgage note. Under plaintiff's assertion, as we understand it, a second mortgagee's claim would not accrue until the prior lien was removed from the property. The application of plaintiff's theory would permit a mortgagor to indefinitely forestall accrual of a second mortgagee's claim on a demand note by refinancing or in some other manner extending the life of the first mortgage indebtedness. Plaintiff fails to cite authorities supporting his novel theory and we know of none. We believe plaintiff's position in this regard to be untenable and clearly contrary to prior holdings of this court. The fact that land was mortgaged as security for the payment of the note does not

affect the starting or running of the statute of limitations. The mortgage is only an incident of the note, and when the note is barred, the mortgage is likewise barred. (*Timmonds v. Messner,* 109 Kan. 518, 200 Pac. 270; *Kulp v. Kulp,* 51 Kan. 341, 32 Pac. 1118, and *Schmucker v. Sibert,* 18 Kan. 104.)

The trial court's findings of fact are supported by competent evidence and the judgment rendered thereon is a proper application of the law.

The judgment is affirmed.