No. 46,261

James J. Lehar and Joe Marie Lehar, *Appellants,* v.
Bennie Rogers, *Appellee.*

(494 P. 2d 1124)

Opinion filed March 4, 1972.

*Otto J. Koerner,* of Wichita, argued the cause, and *G. E. Carnahan,* of Wichita, was with him on the brief for the appellants.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Mikel L. Stout,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This was an action to recover for personal injuries and property damage sustained as a result of an intersection collision. Judgment was rendered on a general verdict for defendant on his counterclaim and plaintiffs have appealed.

On a rainy Sunday afternoon, March 23, 1969, defendant Rogers was driving east on 31st Street approaching the intersection of 31st Street and Meridian Avenue in Wichita. At the same time plaintiff James J. Lehar was driving north on Meridian Avenue approaching the described intersection, his wife, plaintiff Joe Marie Lehar, was a passenger riding in the front seat with her husband.

Traffic on both streets was controlled by signal lights operating in cycles of red, green and amber, or yellow. The signal light on the northeast corner of the intersection, which normally controlled northbound traffic on Meridian Avenue, had been struck by some object and rotated about 90 degrees so that it faced west toward eastbound traffic on 31st Street instead of northbound traffic on Meridian Avenue.

A filling station was located on the southeast corner of the intersection. There were two drives leading into the station from the east side of Meridian Avenue.

Testimony of the parties concerning the entrance of their respective vehicles into the intersection and the conditions of the signal lights at the time was in considerable conflict.

Defendant testified that as he approached the intersection he did not rely on the faulty light which was to his left, but that he entered the intersection in response to the green light facing him on his right. Before he entered the intersection defendant saw plaintiffs' car even with the south drive of the filling station. Defendant did not keep plaintiffs' car under constant surveillance. Defendant also looked to his left and saw some vehicles headed south on Meridian Avenue. He then drove on into the intersection. He further testified that prior to the impact he saw nothing that would constitute an impending danger to his entering and going through the intersection. Defendant never noticed the faulty light to his left until he was in the intersection.

Plaintiff James Lehar testified that when he was 100 to 150 feet south of the intersection the light facing him, and controlling northbound traffic, was green. He looked for eastbound traffic on 31st Street and saw a car coming which did not appear to be slowing down. When he was about 60 feet from the intersection he saw the danger and applied his brakes; when he reached the intersection he glanced up and saw the light facing him was yellow. On cross-examination Lehar testified that he could have stopped his car without hitting defendant if it had not been raining.

Officer Michael J. Kelty, of the Wichita Police Department, prepared the report of the accident. He took statements of both parties. Kelty testified that when he was going over the report with Lehar he questioned him concerning the fact that the report showed that Lehar had a red light for his direction of travel and that at Lehar's request he altered the report by marking out red and writing in yellow.

Burt Cooper, a member of the Wichita Police Department Reserves and commanding officer at the time, was standing in front of the service station and witnessed the accident. Cooper saw Lehar's vehicle when it was right in front of the north drive of the filling station at which time Lehar's light was yellow. Cooper did not know positively whether Lehar entered the intersection on a red light, it was either very near the end of the yellow phase or red. He was certain that Lehar did not have a green light. Cooper further testified that defendant entered the intersection first and that Lehar must have noticed some danger when he applied his brakes at least 55 feet south of the intersection.

Beverly Ann Horning was driving west on 31st Street intending to make a right turn onto Meridian Avenue. She stopped at a red light as she approached Meridian. When she attempted to proceed as the light turned green her car stalled. She started forward on the next green light and again her car stalled. At this point in time she saw the accident. She testified that had her car not stalled as she started forward on this last green light she would have been hit by plaintiffs' car. She further testified that when the accident occurred the signal light controlling traffic on 31st Street was green. On cross-examination she testified that when she looked up after the collision the 31st Street light was red.

Plaintiff, Joe Marie Lehar, testified that immediately prior to the collision she was not paying attention to traffic and was thinking about shopping and various other things. She did know that the streets were wet and that it was raining.

At the conclusion of the evidence, the City of Wichita, originally a party defendant, was dismissed from the action.

The jury returned a general verdict for defendant in the amount of $1,500. The undisputed evidence disclosed that the damage to defendant's car amounted to $962.80 and that his hospital bill totaled $33.20. Thus, it may be assumed the jury awarded the balance, or $504 to defendant for personal injuries.

On appeal plaintiffs assert six points of error. The first and principal contention argued is stated by plaintiffs in these words:

"1. The verdict in favor of the defendant, Rogers, was contrary to the evidence as a matter of law since the defendant, Rogers, admits he did not observe the danger which was in fact present."

Before considering plaintiffs' argument, we should first note rules of appellate review particularly applicable to the point raised.

First, in testing a verdict against the evidence, we are required to consider the evidence in the light most favorable to the party who prevailed in the court below. (*Wiley v. Board of Education,* 205 Kan. 585, 470 P. 2d 792; *Riedel v. Gage Plumbing & Heating Co.,* 202 Kan. 538, 449 P. 2d 521; and *Frame, Administrator v. Bauman,* 202 Kan. 461, 449 P. 2d 525.) Second, this court does not weigh evidence and where a jury's verdict or a trial court's findings are attacked as being contrary to the evidence, the appellate issue is only whether there is any evidence to support the verdict or findings and if so, neither will be overturned on appellate review, *e. g., Brohan v. Nafziger,* 206 Kan. 58, 476 P. 2d 649; *Wiley v. Board of Education,* supra; *In re Estate of Bernatzki,* 204 Kan. 131, 460 P. 2d 527; and *Schnug v. Schnug,* 203 Kan. 380, 454 P. 2d 474. It is of no consequence that there may have been contrary evidence adduced which, if believed by the jury, would have compelled a different verdict. (*Robles v. Central Surety & Insurance Corporation,* 188 Kan 506, 363 P. 2d 427; and *Renner v. Mosanto Chemical Co.,* 187 Kan. 158, 354 P. 2d 326.)

The main thrust of plaintiffs' argument on their first point is that defendant was guilty of negligence as a matter of law and thus the jury's verdict is contrary to law and cannot stand. Plaintiffs take this position on appeal, even though they did not move for a directed verdict on the point at any stage of the trial below.

Defendant testified that he entered the intersection in response to the green light to his right on the northeast corner of the intersection. This is the signal light which normally would govern defendant's actions. Even though inconsistencies were elicited on cross-examination, the testimony of the independent witnesses, Cooper and Horning, supports the testimony of defendant and plaintiffs' own testimony concerning the condition of the lights was inadequate at best. We think it unnecessary to burden this opinion with further details of the evidence. It is only necessary that we consider whether there is substantial evidence upon which the

verdict is based and a recital of the contradictory evidence cannot aid in correctly determining the question. (*Robles v. Central Surety & Insurance Corporation,* supra.) This court has often said that the law favors trial by a jury and the court should not usurp the power and function of the jury by weighing evidence and passing on questions of fact. (*Krentz v. Haney,* 187 Kan. 428, 357 P. 2d 793.)

Plaintiffs argue the defendant could not be found free of negligence because he was guilty of failing to keep a proper lookout; in failing to observe the condition of the signal lights as he approached the intersection; and in failing to keep plaintiffs' vehicle in view. Plaintiffs cite a number of our cases dealing with a driver's lookout duty. The trouble with their position is that this case is one of conflicting and controverted factual testimony as to the condition of the lights. Moreover, the lookout rule cannot be applied here as plaintiffs would have it, as there is evidence that defendant did look and saw plaintiffs' car at a point and under circumstances which made defendant's entrance into the intersection permissible. The question was for the jury.

Under the conflicting testimony attendant here, whether a person had knowledge that the driver of a vehicle would not observe the law of the road, or in the exercise of reasonable diligence should have had such knowledge, presents a jury question. (*Smith v. Salts,* 170 Kan. 313, 224 P. 2d 1025.)

The case of *Wilson v. Cyrus,* 180 Kan, 836, 308 P. 2d 98, involved a light controlled intersection accident very similar to the factual situation in the instant case. In considering the application of the lookout rule we said:

"It is true the general rule is that a person is not to be relieved for failure to see that which is in plain view to be seen, but the rule of course obtains only when the facts and circumstances warrant its application . . . The law is well established that the operator of an automobile may assume that others using the highway will observe the law of the road, and one is not guilty of negligence in acting upon such assumption unless and until he has knowledge to the contrary. (*Keir v. Trager,* 134 Kan. 505, 7 P. 2d 49, 81 A. L. R. 181; *Jones v. McCullough,* 148 Kan. 561, 83 P. 2d 669; *Smith v. Salts,* 170 Kan. 313, 224 P. 2d 1025.) It is equally well settled that as a matter of law one is not guilty of negligence who does not look for danger where there is no reason to apprehend any. (*Fowler v. Mohl,* 172 Kan. 423, 427, 241 P. 2d 517.) In *Hudson v. Yellow Cab & Baggage Co.,* 145 Kan. 66, 69, 64 P. 2d 43, it was said that one who enters an intersection controlled by traffic lights and who carefully observes that the lights are for traffic in the direction he is going is not guilty of negligence as a matter of law because he does not see on

the other street a car driving into the intersection against a red light." (pp. 838, 839.)

See, also, *Harbaugh v. Darr*, 200 Kan. 610, 438 P. 2d 74; and *State v. Dean*, 179 Kan. 24, 292 P. 2d 694.

Since the general verdict for defendant imports a finding in defendant's favor on all issues in the case we must, on appellate review, start with the proposition that the jury, under the court's instructions, found that defendant entered the intersection at a reasonable speed in response to a green light and that plaintiffs entered against a red light in violation of law.

There is ample evidence to support the jury's verdict on the question of negligence and proximate cause; therefore, the verdict cannot be disturbed as a matter of law.

Plaintiffs claim the verdict with respect to personal injuries of defendant was based in whole or in part upon speculative findings not supported by evidence. As we have indicated, the allowance for personal injuries to defendant must be assumed to amount to $504. There was evidence that defendant was taken to the emergency room of the St. Joseph Hospital where he incurred a bill of $33.20 for medical supplies, x-rays and professionel fees. Defendant testified that he suffered an injury to his right knee which was healed 19 days after the accident. The property damage to his automobile was substantial. It must be conceded that some pain would follow a knee injury suffered in an impact between two moving vehicles. Certainly, it cannot be said that an award of $504 is so grossly excessive as to be set aside.

There is no fixed standard for measuring the adequacy or inadequacy of a verdict, the question must be decided on the particular facts of each case and the extent of a personal injury is ordinarily a matter for the jury to determine. *(Brown v. Godfrey,* 200 Kan. 568, 438 P. 2d 117.) In order for a judgment to be set aside on grounds of an excessive verdict, it must appear the amount is so grossly excessive as to shock the conscience of the court. *(Spencer v. Eby Construction Co.,* 186 Kan. 345, 350 P. 2d 18.)

Plaintiffs next complain that the trial court erred in failing to specify the acts of negligence claimed by the respective parties. The record reveals the trial court fully stated the claims of the parties and defined the issues. The court defined proximate cause, negligence, contributory negligence, stated the rules of the road which particularly concern traffic controlled by signal lights, and

directed the jury to determine what rules were applicable and which were violated. The instructions were adequate and we find no instance in which the plaintiffs have made it affirmatively appear that substantial prejudice resulted by reason of any instructions given or in refusal of any instructions requested.

Plaintiffs claim error in giving an instruction concerning the duty of Mrs. Lehar as a passenger. In her testimony, Mrs. Lehar admitted she was not paying attention, and that she knew it was raining and the streets were wet. In *Beye v. Andres*, 179 Kan. 502, 296 P. 2d 1049, the duty of a passenger under similar circumstances was considered and it was held:

"Although the negligence of a driver is not imputed to a guest, or passenger, it nevertheless is the duty of a guest, or passenger, to exercise reasonable care for his own safety, and, where he has the same opportunity as a driver to observe the dangerous conditions and circumstances and fails to take any precautions whatsoever for his own safety until it is too late, he is guilty of contributory neglience which bars recovery." (Syl. ¶ 6.)

Although the record does not clearly disclose whether plaintiffs lodged an objection at the time, they claim on appeal the trial court erred in permitting defendants to exercise six peremptory challenges—that is three each for the City of Wichita and defendant Rogers.

, K. S. A. 1971 Supp. 60-247(*b*) authorizes three peremptory challenges for each party except that:

". . . If there is more than one defendant and if the judge finds there is a good faith controversy existing between the defendants, the court shall allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly."

In their petition, plaintiffs alleged that the City of Wichita negligently allowed a traffic signal to improperly direct traffic after notice thereof. Plaintiffs further alleged that they had filed a claim against the City of Wichita for damages under K. S. A. 1971 Supp. 12-105. In his answer defendant Rogers pleaded in the alternative that plaintiffs' damages, if any, were the result of negligence of parties other than defendant. With the case in this posture, at the time of impaneling the jury, the trial court could well have found a good faith controversy between the City and defendant Rogers on the issue of proximate cause. The trial court did not make an express finding that a controversy existed between defendants but plaintiffs made no objection on this ground. The record shows that counsel for plaintiffs merely inquired of the

court—"Don't we get the same amount that they do." The court's response in the negative was correct under the *statute*. We find no error shown with respect to the trial court's handling of the peremptory challenges.

We have examined other trial errors urged by plaintiffs and find nothing therein proposed that approaches reversible error.

Essentially, this is a fact case in which all issues were fully litigated and decided by the jury. The verdict or any part thereof cannot be reversed without weighing evidence or attempting to judge credibility of witnesses. Such matters are beyond the scope of appellate review.

The judgment is affirmed.